1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

ANDREW MAXWELL CLAY, et al.,

CASE NO. C18-1262JLR

11

Plaintiffs,

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

12

v.

13

HILTON WORLDWIDE
HOLDINGS, INC., et al.,

14

15

Defendants.

16

## I.   INTRODUCTION

17

Before the court is Defendants Hilton Worldwide Holdings, Inc. ("Hilton

18

Worldwide"), Hilton Management Services (CIS) LLC ("HMS"), Hilton International

19

Holdings ("Hilton International"), and Hilton Hospitality, LLC's ("Hilton Hospitality")

20

(collectively, "Moving Defendants") motion for summary judgment based on res

21

judicata, collateral estoppel, forum non conveniens, and international comity.  (*See* MSJ

22

(Dkt. # 35).)  Plaintiffs Andrew Maxwell Clay and Tonja Clay (collectively, "the Clays")

oppose the motion.  (*See* Resp. (Dkt. # 37).)  The court has reviewed the motion, the

parties' submissions in support of and in opposition to the motion, the relevant portions

of the record, and the applicable law.  Being fully advised,[1] the court GRANTS Moving

Defendants' motion and enters summary judgment in favor of Moving Defendants and

against the Clays.

## II.    BACKGROUND

This lawsuit arises from an accident that occurred on September 16, 2015, in

Phuket, Thailand.  (Clay Decl. (Dkt. # 39) ¶¶ 5-8.)  At the time, Mr. Clay was a product

marketing manager for non-party Fluke Biomedical ("Fluke"), located in Everett,

Washington.  (*Id.* ¶ 3.)  Fluke planned a large regional sales meeting at the Hilton Phuket

Arcadia Resort & Spa ("Hilton Arcadia") in Phuket, Thailand.  (*Id.* ¶¶ 3-4.)  Mr. Clay

attended the meeting and was a scheduled presenter.  (*Id.* ¶ 4.)  During his presentation,

Mr. Clay walked across the stage toward a screen on which his presentation slides

appeared.  (*Id.* ¶ 6.)  The stage was about five feet above the floor of conference room

where Mr. Clay was speaking.  (*See id.* ¶ 5.)  Unbeknownst to Mr. Clay, in setting up the

stage, the hotel staff left a gap between the stage and the screen, which Mr. Clay did not

see.  (*Id.* ¶ 7.)  As he walked toward the screen to point out a feature that appeared on one

---

[1] "A party desiring oral argument shall so indicate by including the words "ORAL ARGUMENT REQUESTED" in the caption of its motion or responsive memorandum."  *See* Local Rules W.D. Wash. LCR 7(b)(4).  The Clays do not request oral argument.  (*See* Resp. at 1.)  Moving Defendants request oral argument in a praecipe filed the day after their motion for summary judgment.  (*See* Praecipe (Dkt. # 36).)  Even assuming Defendants' request complies with the court's local rules, the court does not consider oral argument to be helpful to its disposition of Defendants' motion, and therefore, denies Defendants' request.  *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

1   of his slides, he fell into the gap at the back of the stage and suffered injuries.  (*Id.*

2   ¶¶ 8-14, Ex. A (attaching a video depicting the incident).)

3        Hilton Arcadia is owned by Defendant P.P.C. Enterprise Co., Ltd. ("PPC") and

4   managed by Defendant Hilton International (Thailand) Co. LTD ("Hilton Thailand")

5   (collectively, "Thai Defendants").[2]  (*See* Sidhu Decl. (Dkt. # 35-3) ¶ 5; *see also* Compl.

6   (Dkt. # 1) ¶¶ 2.7-2.8; MSJ at 2.)  On September 16, 2016, Mr. Clay initiated a lawsuit in

7   Thailand against Thai Defendants ("the Thai Action").  (Missen Decl. (Dkt. # 35-2) ¶ 2;

8   Clay Decl. ¶ 15; Resp. at 4 ("A lawsuit was filed in Thailand against the local owner of

9   the Hilton Arcadia and against the local management company.").)  Mr. Clay's complaint

10  in the Thai Action asserted a claim for wrongful or negligent acts by Thai Defendants and

11  sought compensation for his injuries.  (Missen Decl. ¶ 3, Ex. A (attaching English

12  translation of the Thai court's March 22, 2018, judgment concerning Mr. Clay's Thai

13  Action, which states that Mr. Clay's Thai complaint alleged that Thai Defendants "had

14  negligently set up the stage").)

15       The Thai Action went to trial, but Mr. Clay did not appear at the trial because his

16  medical providers had not yet cleared him for international travel.  (*See id.* ¶ 3, Ex. A; *see*

17  *also* Clay Decl. ¶¶ 15-18.)  Mr. Clay's Thai attorneys asked the Thai court to continue the

18  trial until Mr. Clay was able to travel and present testimony, but the Thai court declined

19

20      [2] In addition to Moving Defendants, the Clays also sued Thai Defendants, both of which
    are Thai corporations.  (*See* Compl. ¶¶ 2.7-2.8.)  On December 21, 2018, the court granted the

21  Clays' motion asking the court to sign and seal for delivery two letters rogatory to facilitate
    service of process on Thai Defendants.  (*See* 12/21/18 Order (Dkt. # 15).)  However, to date, the
    Clays have filed no evidence that they have served process on Thai Defendants; nor have Thai

22  Defendants appeared in this action.  (*See generally* Dkt.)

to do so.  (Clay Decl. ¶ 17.)  As a result, Mr. Clay presented evidence solely in written

form at the Thai trial.  (*See* Krupica Decl. (Dkt. # 42) ¶ 10.)  Although Thai Defendants

presented testimony (*see* Missen Decl. ¶ 3, Ex. A at 2), Mr. Clay's Thai attorneys did not

call any witnesses or cross examine any witnesses during the Thai Action (*see* Krupica

Decl. ¶ 9; *see also* Missen Decl ¶ 3, Ex. A at 2 ("The remaining damages were uncertain

and there was no evidence supporting the injury suffered by [Mr. Clay].")).

Following the trial, on March 22, 2018, the Thai court issued the following

judgment:

> The next issue to be considered is whether [Thai] Defendants and [Fluke
> South East Asia Pte. Ltd. ("Fluke SE Asia")] committed wrongful acts
> against [Mr. Clay] or not.  [Mr. Clay] claimed that [Thai] Defendants had
> negligently committed wrongful acts against [him], and the Court granted
> permission for [Fluke SE Asia] to join the proceedings to jointly be held
> responsible for [Mr. Clay's] claims.  When [Thai] Defendants and [Fluke SE
> Asia] denied the claims, [Mr. Clay] shall bear the burden of proof on how
> the act committed by [Thai] Defendants and [Fluke SE Asia] was the
> wrongful act against [Mr. Clay].  Since [Mr. Clay] did not adduce any
> evidences during the taking of evidence, it cannot be concluded that [Thai]
> Defendants and [Fluke SE Asia] committed wrongful acts against [Mr. Clay]
> and thus shall not be liable for the damages claimed in the [com]plaint.  The
> remaining issues shall not be further considered since it will not affect the
> judgment.
>
> The Court renders its judgment to dismiss the case; [Mr. Clay] was to be
> liable for the lawyer fees of [Thai] Defendants and [Fluke SE Asia] which is
> determined to be THB 100,000 per party.

(Missen Decl. ¶ 3, Ex. A at 3 (alterations added).)

Mr. Clay filed the present suit in the Western District of Washington on August

27, 2018 ("the Washington Action").  (*See* Compl.)  On January 13, 2020, Moving

Defendants filed a motion for summary judgment asserting the Clays' claims are barred

ORDER - 4

or their complaint must be dismissed based on (1) res judicata, (2) collateral estoppel, (3) forum non conveniens, and (4) international comity.  (*See generally* MSJ.)  The Clays oppose Moving Defendants' motion.  (*See generally* Resp.)  The court now considers Moving Defendants' motion.

### III.    ANALYSIS

**A.    Summary Judgment Standard**

Summary judgment is proper when the pleadings, discovery, and other materials on file, including any affidavits or declarations, show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005).  To satisfy its burden at summary judgment, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citing *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990)).  "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

1  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation

2  marks omitted) (citing, among other cases, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106

3  (1986)).

4  **B.      Res Judicata**

5       Moving Defendants argue that the Thai Action and the Thai court's judgment

6  should have preclusive effect on the Clays' ability to litigate the same claims in this

7  court.  (MSJ at 6-9.)  Res judicata "provides that a final judgment on the merits of an

8  action precludes the parties from re-litigating all issues connected with the action that

9  were or could have been raised in that action."  *Rein v. Providian Fin. Corp.*, 270 F.3d

10  895, 898-99 (9th Cir. 2001).

11       The first issue the court must resolve is whose law governs the asserted claim

12  preclusive or res judicata effect of the Thai judgment.  "In . . . federal diversity of citizen

13  actions, the recognition and enforcement of foreign judgments is governed by state law."

14  *In re Birting Fisheries, Inc.*, 300 B.R. 489, 502 n.13 (B.A.P. 9th Cir. 2003) (citing *British

15  Midland Airways Ltd. v. Int'l Travel, Inc*., 497 F.d 869, 871 n.2 (9th Cir. 1974) (applying

16  Washington law to the enforcement of an English judgment in a diversity action in

17  district court)); *see also Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 359 (10th

18  Cir. 1996) (ruling in a diversity action that, when analyzing the defendant's res judicata

19  argument concerning an Australian judgment, "state, not federal, law . . . governs the

20  effect to be given foreign judgments").  Thus, the court's task here is to determine

21  whether Washington would recognize the Thai judgment, and if so, whether the Thai

22  judgment precludes the Clays' suit.  *See Phillips*, 77 F.3d at 359.

1    Neither party asserts that Washington would not recognize the Thai judgment.

2    (*See generally* MSJ; Resp.)  Washington has adopted the Uniform Foreign-Country

3    Money Judgments Recognition Act, RCW ch. 6.40A ("the Act"), "which provides for the

4    efficient recognition of money judgments from outside the United States," *Max Telecom*

5    *OOD v. Juni Am., Inc*., No. C15-2006-TSZ, 2016 WL 7724590, at *1 (W.D. Wash. Apr.

6    26, 2016) (recognizing Bulgarian judgment under the Act).  The Act applies to all

7    foreign-country judgments that:  (i) grant or deny recovery of a sum of money; and (ii)

8    are final, conclusive, and enforceable in the country where rendered.[3]  RCW

9    6.40A.020(1).  As the party seeking recognition of the Thai judgment, Moving

10   Defendants bear the burden of establishing the applicability of the Act.  RCW

11   6.40A.020(3).

12   The Thai judgment both denies Mr. Clay the recovery of any damages for his

13   alleged injuries and grants Thai Defendants and non-party Fluke SE Asia an award of

14   attorney's fees.  (*See* Missen Decl ¶ 3, Ex. A at 3 (concluding that the defendants "shall

15   not be liable for the damages as claimed in the [com]plaint," and stating that Mr. Clay

16   "was to be liable for the lawyer fees" of the defendants).)  Thus, the court concludes that

17   the Act's first requirement—that the judgment grant or deny the recovery of a sum of

18   money—is met.  With respect to the second element, Moving Defendants provide an

19   //

20

21   [3] In addition, the Act does not apply to judgments that are for (1) taxes, (2) a fine or other penalty, or (3) divorce, support, or maintenance or otherwise rendered in connection with domestic relations.  RCW 6.40A.020(2).  No party argues that the judgment relates to any of these elements (*see generally* MSJ; Resp.); nor does the judgment itself so indicate (*see* Missen Decl. ¶ 3, Ex. A).

22

1   English translation of the Thai judgment, which states that the court "renders its judgment

2   to dismiss the case." (*Id.*)  Further, nothing about the judgment itself indicates that it is

3   anything less than a final, conclusive, and enforceable resolution of the parties' dispute in

4   Thailand (*see generally id.*); nor do the Clays assert otherwise (*see generally* Resp.; *see*

5   *also* Krupica Decl. ¶ 15 ("In Thailand, a party may not relitigate the same issue already

6   decided in a previous Thai court.")).[4]  Accordingly, the court concludes that the Act's

7   second requirement—that the judgment is final, conclusive, and enforceable—is also

8   met.  Because Moving Defendants have established a prima facie case for recognition of

9   the Thai judgment, the burden shifts to the Clays to establish an exception to such

10   recognition, *see Max Telecom OOD*, 2016 WL 7724590, at *1 (citing RCW

11   6.40A.030(4)), which the Clays have not attempted to do, *see generally* Resp.  The court,

12   therefore, concludes that Washington would recognize the Thai judgment under the Act.

13   "A recognized 'foreign-country judgment is . . . [enforceable in the same manner and to

14   the same extent as a judgment rendered in this state].'" *Shanghai Commercial Bank Ltd.*

15   *v. Kung Da Chang*, 404 P.3d 62, 65 (Wash. 2017) (citing RCW 6.40A.060(2))

16   (alterations in original).

17        Next, the court "considers whether this recognition would extend to finding that

18   the [foreign] action forbids the instant suit under the principles of claim preclusion or res

19   judicata." *See Phillips*, 77 F.3d at 360.  In Washington, "[f]iling two separate lawsuits

20   based on the same event—claim splitting—is precluded[.]" *Ensley v. Pitcher*, 222 P.3d

21   _____

22   [4] Indeed, the Clays do not challenge the accuracy or authenticity of Moving Defendants'
English translation of the Thai judgment.  (*See generally* Resp.)

99, 102 (Wash. Ct. App. 2009).  Under Washington's res judicata doctrine, all issues that

might have been raised and determined in the first suit are precluded in the second.  *See*

*Karlberg v. Otten*, 280 P.3d 1123, 1130 (Wash. Ct. App. 2012) (explaining that the

"general rule is that if an action is brought for part of a claim, a judgment obtained in the

action precludes the plaintiff from bringing an action for the residue of the claim.")

(internal quotations omitted); *see also Feminist Women's Health Ctr. v. Codispoti*, 63

F.3d 863, 868 (9th Cir.1995) (applying Washington law and stating that "[a]ll issues

which might have been raised and determined are precluded"); *Loveridge v. Fred Meyer,*

*Inc.*, 887 P.2d 898, 900 (Wash. 1995).  Under Washington law, a prior judgment will bar

litigation of a subsequent claim if the prior judgment has a concurrence of identity with

the subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties,

and (4) the quality of the persons for or against whom the claim is made.[5]  *Gold Star*

*Resorts, Inc. v. Futurewise*, 222 P.3d 791, 798 (Wash. 2009).  The court considers each

of these elements in turn.

## 1. Identity of Subject Matter

The first element to consider in applying res judicata is whether there is a

concurrence of identity in the subject matter of the two lawsuits.  *See id.*  Both the Thai

Action and the Washington Action stem from Mr. Clay's personal injury claim arising

from his fall at the Hilton Arcadia.  (*Compare* Compl. *with* Missen Decl ¶ 3, Ex. A.)

---

[5] In all cases, res judicata applies under Washington law only if there is a final judgment
on the merits.  *Karlberg*, 280 P.3d at 1130.  As discussed above, the court has already
determined that the judgment in the Thai Action meets this requirement.

1    Indeed, in the Thai Action, Mr. Clay alleged that the Thai Defendants "negligently set up

2    the stage" by "not arrang[ing] the stage to lean against the wall," but rather "prepar[ing]

3    such stage to be not less than 1.5-meter[s] [with] a gap between the stage and the screen

4    of the projector."  (Missen Decl. ¶ 3, Ex. A at 1.)  In the Washington Action, the Clays

5    allege that Foreign and Moving Defendants "failed in their duties to [Mr. Clay] as a

6    business invitee when they set up the stage and screen with a gap between them, which

7    was not likely to be noticed by a person on the stage."  (Compl. ¶ 5.4)

8          Despite these similarities, the Clays nevertheless argue that the subject matter of

9    the two suits differs because "[o]ne of the claims [in the Washington Action] against

10   Hilton Worldwide is that they [sic] enticed Fluke to hold conventions at the Hilton

11   Arcadia by promoting a level of safety and attention to detail that was not true."  (Resp.

12   at 13.)  However, these factual allegations against Hilton Worldwide (*see* Compl.

13   ¶¶ 4.4-4.5) still relate to the Clays' negligence claim against both Moving Defendants and

14   Thai Defendants in the Washington Action for the injuries Mr. Clay allegedly incurred

15   when he fell at the Hilton Arcadia Hotel (*see id.* ¶¶ 5.1-5.5) and do not constitute a

16   separate "claim" that alters the subject matter of the Washington Action.  Indeed,

17   although Mr. Clay worked for Fluke, Fluke is not a party to the Washington Action.  (*See*

18   *generally* Compl.)  The Clays' complaint in the Washington Action alleges similar facts

19   and seeks to redress the same basic wrong—the injuries that Mr. Clay allegedly incurred

20   when he fell from the stage at the Hilton Arcadia.  Thus, the court concludes that the Thai

21   Action and Washington Action have a concurrence of subject matter identity.

22   *//*

ORDER - 10

**2.  Identity of Claims or Causes of Action**

The second element is concurrence of identity between the causes of action in the two suits.  *Gold Star Resorts, Inc.*, 222 P.3d at 798.  In its March 22, 2018, judgment, the Thai court describes the alleged wrongful act Mr. Clay asserted in the Thai Action as follows:

> [Thai Defendants] had obligations to jointly provide a meeting venue, prepare the stage for educational lecturing, [and] arrange the projector system together with a large screen at the back of the stage. . . . However, [Thai Defendants] had negligently set up the stage without exercising such care as might be expected from a person under such condition[s] and circumstances and [Thai Defendants] could exercise such care but did not do so sufficiently. In other words, [Thai Defendants] did not arrange the stage to lean against the wall at the back of the room.  Also, [Thai Defendants] prepared the stage to be not less than 1.5-meter[s] and had a gap between the stage and the screen of the projector.  On the other hand, the ordinary persons who encounter such circumstances would push the stage to be attached to the wall at the back of the room in order to close the gap between the stage and the wall, and the stage should not be higher than 1-meter.  Furthermore, there should be noticeable signs or marks so that the speaker could notice such gap easily.  In addition, [Thai Defendants] should place some equipment to support the weight between the gaps which would prevent the speaker from falling into. . . . The acts of [Thai Defendants] thus caused damages to [Mr. Clay], which is considered as a commission of wrongful act against [Mr. Clay].

(Missen Decl. ¶ 3, Ex. A at 2-3 (alterations added).)  Ultimately, the Thai court determined that "[s]ince [Mr. Clay] did not adduce any evidence during the taking of evidence, it cannot be concluded that [Thai Defendants] committed wrongful acts against [Mr. Clay]."  (*Id.* at 3.)  Nevertheless, the "wrongful act" described by the Thai court is an alleged act or acts of negligence on the part of Thai Defendants.  (*See id.* at 2-3.)  In the Washington Action, the Clays entitle their cause of action as follows:  "Defendants' conduct in creating and maintaining a dangerous condition at the hotel was negligent and

1  wrongful." (Compl. at 9 (bolding omitted).)  Thus, on their face, the causes of action in

2  the two suits have a concurrence of identity.  *Gold Star Resorts, Inc.*, 222 P.3d at 798.

3       The Clays nevertheless argue that "Thailand's Wrongful Act is not the same as a

4  negligence claim based on premises liability." (*See* Resp. at 13; *see also* Missen Decl.

5  ¶ 3, Ex. A at 2 (setting forth the disputed issue as whether Thai Defendants "committed

6  wrongful acts against [Mr. Clay] or not").)  The Clays also submit testimony from Mr.

7  Clay's Thai attorney who attests that there is "no specific equivalent" in Thai law giving

8  rise to an enhanced duty of care by a business owner to a business invitee and that a Thai

9  court may take into account "a host of factors" in determining "whether a defendant has

10  engaged in a wrongful act . . . which may be different than American courts." (Krupica

11  Decl. ¶¶ 17-18.)

12       In determining whether two suits have an identity of causes of action, Washington

13  courts consider four flexible factors:  (1) whether the rights or interests established in the

14  prior judgment would be destroyed or impaired by prosecution of the second action; (2)

15  whether substantially the same evidence is presented in the two actions; (3) whether the

16  two suits involve infringement of the same rights; and (4) whether the two suits arise out

17  of the same transactional nucleus of facts.  *Rains v. State*, 674 P.2d 165, 168 (Wash.

18  1983); *Energy Nw. v. Hartje*, 199 P.3d 1043, 1048 (Wash. Ct. App. 2009).  "These four

19  factors are analytical tools; it is not necessary that all four factors be present to bar the

20  claim." *Ensley*, 222 P.3d at 105.

21       Even if the Thai court describes Mr. Clay's cause of action in somewhat different

22  terms than a Washington court might, the foregoing factors weigh in favor of finding an

1    identity of the causes of action.  First, the interests of Thai Defendants in the Thai court's

2    finding of no liability would be impaired by a second prosecution subjecting Thai

3    Defendants to the potential of liability based on the same underlying incident.  Second,

4    no party disputes that the overlap in relevant evidence between the two suits is substantial

5    if not complete.

6         With respect to the third factor, Mr. Clay argues that he has greater rights against

7    Defendants in Washington than in Thailand due to the case authority surrounding

8    premises liability in Washington.  (*See* Resp. at 13.)  However, given the manner in

9    which the Thai court describes the issue to be decided, there is substantial overlap

10   between the duties Defendants owe to Mr. Clay in the two forums.  Thus, this factor—to

11   the extent it weighs against a finding of identity in the causes of action—does not weigh

12   significantly so.

13        The fourth factor—whether the two suits arise out of the same nucleus of facts—is

14   the most important.  *Déjà Vu-Everett-Fed. Way, Inc. v. City of Fed. Way*, 979 P.2d 464,

15   468 (Wash. Ct. App. 1999).  The nucleus of facts is identical in both cases.  As discussed

16   above, both suits arise entirely out of Mr. Clay's accident when he fell off the stage at

17   Hilton Arcadia.  (*Compare* Compl. *with* Missen Decl. ¶ 3, Ex. A); *see supra* § III.B.1.

18   Thus, the court concludes that the relevant factors weigh heavily in favor of finding that

19   there is a concurrence of identity between the causes of action in the two suits.  *See Gold*

20   *Star Resorts, Inc.*, 222 P.3d at 798.

21   //

22   //

### 3.  Identity of Persons or Parties and the Quality of Parties

"The fourth element of res judicata simply requires a determination of which parties in the second suit are bound by the judgment in the first suit."  *Ensle*y, 222 P.3d at 106.  "The general rule is that a judgment is res judicata, and therefore binding, on all parties to the original litigation, plus all persons in privity with such parties."  D. Ende, 14A Wash. Prac., Civil Procedure § 35:27 (3d ed. 2018).  Mr. Clay and Thai Defendants were present in the Thai Action; and these parties are also present in the Washington Action.  (*Compare* Compl. ¶¶ 2.1, 7-2.8, *with* Missen Decl. ¶ 3, Ex. A at 1.)  Moving Defendants, however, appear only in the Washington Action.  (*Compare* Compl. ¶¶ 2.3-2.6, *with* Missen Decl. ¶ 3, Ex. A.)  However, the Clays allege that Thai Defendants are "actual, equitable, and apparent agent[s]" of Moving Defendants. (Compl. ¶¶ 2.7-2.8.)  Under Washington law, "a principal's liability may be discharged if the judgment in favor of the agent is on the merits."  *Glover v. Tacoma Gen. Hosp.*, 658 P.2d 1230, 1237 (Wash. 1983), *abrogated by Crown Controls, Inc. v. Smiley*, 756 P.2d 717 (Wash. 1988) (citing *Vern J. Oja & Assocs. v. Wash. Park Towers, I*nc., 569 P.2d 1141 (Wash. 1977)).  Further, courts in Washington have found privity where the parties to successive lawsuits share a principal-agent relationship.  *See Kuhlman v. Thomas*, 897 P.2d 365, 368-69 (Wash. Ct. App. 1995).  Thus, the court concludes that there is identity of the parties in the Thai and Washington Actions for purposes of applying the doctrine of res judicata.

The Clays acknowledge the foregoing principles but nevertheless argue that the court should deny Moving Defendants' motion because Moving Defendants "have

1    submitted no documentation, affidavits or other evidence establishing an agency

2    relationship." (Resp. at 14.)  Here, however, the Clays have alleged these facts in their

3    complaint (*see* Compl. ¶¶ 2.7-2.8), and they may not now deny them to avoid the

4    consequences of res judicata.

5         Finally, the "quality of the persons" element requires that the parties to both action

6    be in an adversarial posture with one another.  *See Bordeaux v. Ingersoll Rand Co*., 429

7    P.2d 207, 211 (Wash. 1967).  That is the case here.  Therefore, the court finds that this

8    element is satisfied.  *See Karlberg*, 280 P.3d at 1130.

9         In sum, the court concludes that the doctrine of res judicata applies to the Clays'

10   Washington Action, and accordingly, the court GRANTS Moving Defendants' motion

11   and enters summary judgment in their favor on the Clays' claims.

12   **C.    Collateral Estoppel**

13        Moving Defendants also ask that the court grant summary judgment in their favor

14   based on the doctrine of collateral estoppel or issue preclusion.  (MSJ at 9-12.)

15   Specifically, Moving Defendants argue that the issues of Thai Defendants' negligence

16   and Mr. Clay's entitlement to compensation have been litigated on the merits in the Thai

17   Action and those determinations prevent their re-litigation in the Washington Action.

18   (*See id.*)  As with res judicata, because the court's jurisdiction in this case is grounded in

19   diversity, the court applies the law of the state in which it sits to determine whether

20   collateral estoppel applies to the issues raised here.  *See Jacobs v. CBS Broad., Inc*., 291

21   F.3d 1173, 1177 (9th Cir. 2002).

22   *//*

ORDER - 15

1   Collateral estoppel bars the re-litigation of issues that were decided in a previous

2   proceeding involving the same parties.  *Sprague v. Spokane Valley Fire Dep't*, 409 P.3d

3   160, 183 (Wash. 2018).  Under Washington law, the court considers four factors when

4   deciding whether collateral estoppel applies:  (1) whether the issue decided in the prior

5   action was identical to the issue presented in the second action; (2) whether the prior

6   action ended in a final judgment on the merits; (3) whether the party to be estopped was a

7   party or in privity with a party in the prior action; and (4) whether the application of the

8   doctrine will work an injustice.  *See Sprague v. Spokane Valley Fire Dep*'t, 409 P.3d 160,

9   183 (Wash. 2018) (citing Shoemaker v. City of Bremerton, 745 P.2d 858, 860 (Wash.

10  1987)).  In addition, the issues to be precluded must have been actually litigated and

11  necessarily decided in the first proceeding.  *Id.*  Further, the party against whom collateral

12  estoppel is asserted must have had a full and fair opportunity to litigate the issues in the

13  first proceeding.  *Id.*

14  The Clays challenge only the first and fourth elements of collateral estoppel—

15  whether the issues in the two actions are identical and whether application of the doctrine

16  will work an injustice.[6]  (*See* Resp. at 7 ("In the present case, it is the first requirement

17  (identity of issues) and the fourth requirement (not work an injustice) that are at issue.").)

18  The court will consider each of these elements in turn.

19  //

20

---

21  [6] Because the Clays do not challenge the second and third elements of collateral estoppel, the court does not consider them here.  The court notes, however, that its analysis of these issues

22  in the context of its application of res judicata to this case would be largely applicable in the context of its application of collateral estoppel as well.  *See supra* §§ III.B., III.B.3.

1    **1.      Identity of the Issues**

2         The Clays argue that "[a]lthough there are similarities between Thailand's

3    Wrongful Act statute and a [United States] negligence claim, they are applied in such

4    vastly different ways that there is not an identity of issues." (*Id.* at 8.)  To support their

5    argument, the Clays describe the differences they and their Thai lawyers see between a

6    negligence claim in Thailand and one brought in the United States.  (*See id.* at 8-10.)  For

7    example, the Clays note that there is no provision in the Thai code that describes the

8    enhanced duties that a landlord might have in the United States to a business invitee. (*See*

9    *id.* at 8.)  The problem with the Clays argument is that this court will not be applying law

10   generally from the United States.  Indeed, "a federal court sitting in diversity must apply

11   the substantive law of the state in which it sits, including that state's choice-of-law rules."

12   *Dees v. Billy*, 357 F. App'x 813, 815 (9th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec.*

13   *Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Thus, the court looks to Washington law to

14   determine which law to apply to the Clays' tort action against both Thai Defendants and

15   Moving Defendants.  As discussed below, under Washington's choice of law rules, this

16   court would apply Thailand's law to the issue of the Thai Defendants' liability.

17   Accordingly, the court concludes that the issues in the Thai Action and the Washington

18   Action concerning the Thai Defendants' liability and Mr. Clay's entitlement to

19   compensation are identical.

20         First, Washington requires a valid conflict of law issue to engage in a choice of

21   law discussion.  *Rice v. Dow Chem. Co*., 875 P.2d 1213, 1216 (Wash. 1994).  The Clays

22   maintain that there are conflicts between the relevant law in Thailand and Washington

1  law (*see* Resp. at 8-9); thus, this requirement is met.  Next, if a valid conflict of law

2  exists, a court applying Washington law settles choice-of-law issues following a two-step

3  process.  *Zenaida-Garcia v. Recovery Sys. Tech.*, 115 P.3d 1017, 1019-20 (Wash. Ct.

4  App. 2005).  First, the court analyzes the contacts the parties and the underlying claim

5  have to the states, including:  (1) the place where the injury occurred; (2) the place where

6  the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of

7  incorporation, and place of business of the parties; and (4) the place where the

8  relationship, if any, between the parties is centered.  *Id*.  If the contacts are evenly

9  balanced, the second step of the analysis involves an evaluation of the interests and

10 public policies of the concerned states to determine which state has the greater interest in

11 determination of the particular issue.  *Id.* at 1020.  In personal injury cases, there is a

12 presumption that the law of the state where the injury occurred applies, unless another

13 state has a greater interest in determining a particular issue.  *Martin v. Goodyear Rubber*

14 *& Tire Co*., 61 P.3d 1196, 1199 (Wash. Ct. App. 2003).

15        Here, the accident that caused Mr. Clay's injury occurred in Thailand.  (*See*

16 Compl. ¶¶ 1.3-1.4.)  As noted above, in cases of personal injury, the location of injury

17 plays an important role in selecting the applicable law.  *Augello v. Bobcat Co*., No.

18 CV-12-354-LRS, 2013 WL 1209936, at *2 (E.D. Wash. Mar. 25, 2013) (citing

19 Restatement (Second) of Conflict of Laws § 145 (1971)) (concluding that this factor

20 weighed in favor of applying Idaho law when the accident causing the injury at issue

21 occurred there).  Thus, the court concludes that the first factor favors application of Thai

22 law.

1    The second factor is the place where the conduct causing Mr. Clay's alleged injury

2    occurred. *See Zenaida-Garcia*, 115 P.3d at 1019.  Mr. Clay alleges that the staff at the

3    Hilton Arcadia in Phuket, Thailand constructed an elevated stage with a gap between the

4    screen and the rear of the stage, which he fell through injuring himself.  (*See* Compl.

5    ¶¶ 1.3-1.4, 4.6-4.10.)  Accordingly, the court concludes that this factor also favors the

6    application of Thai law to the Clays' negligence claim in the Washington Action.

7    The third factor—the domicile, residence, nationality, place of incorporation, and

8    place of business of the parties—does not favor the application of any particular state's

9    law. *See Zenaida-Garcia*, 115 P.3d at 1020.  The Clays are residents of Washington.

10   (Compl. ¶¶ 2.1-22.)  Hilton Worldwide, HMS, and Hilton International are Delaware

11   corporations.  (*Id.* ¶¶ 2.3-2.4, 2.6.)  Hilton Worldwide has its principal place of business

12   in Virginia.  (OSC Resp. (Dkt. # 4) at 2.)  Hilton Hospitality is a Nevada corporation.

13   (Compl. ¶ 2.5.)  None of these corporate entities have their principal places of business in

14   Washington.  (OSC Resp. at 3.)  Finally, Thai Defendants are both Thai corporations.

15   (Compl. ¶¶ 2.7-2.8.)  Thus, this factor is neutral and does not favor the application of the

16   law of either Washington or Thailand to the Clays' negligence claim in the Washington

17   Action.

18   The last factor is the place where the relationship, if any, between the parties is

19   centered. *Zenaida-Garcia*, 115 P.3d at 1020.  "When there is a relationship between the

20   plaintiff and the defendant and when the injury was caused by an act done in the course

21   of the relationship, the place where the relationship is centered is another contact to be

22   considered." *See* Restatement (Second) of Conflict of Laws § 145 cmt. (1971).  Here,

1    Mr. Clay was a guest at the Hilton Arcadia at the time of his accident.  The Clays allege

2    that Hilton Arcadia is owned and operated by the Thai Defendants, who, in turn, the

3    Clays allege are Moving Defendants' agents.  (*See* Compl. ¶¶ 2-7-2.8.)  Thus, there was a

4    relationship between Mr. Clay and Thai Defendants at the time of his accident and that

5    relationship was centered in Thailand.  Accordingly, the court concludes that this factor

6    favors application of Thai law to the Clays' negligence claim as well.

7           In sum, three of the four relevant factors weigh in favor of the application of Thai

8    law to the Clays' negligence claim.  The fourth factor is neutral.  Because these factors

9    are not evenly balance, but rather weigh heavily in favor of the application of Thai law,

10   the court need not engage in an evaluation of the interests and public polices of the

11   concerned states.  *See Zenaida-Garcia*, 115 P.3d at 1020.  Accordingly, the court

12   concludes that were the Clays' Washington Action to proceed, the court would apply

13   Thai law to the Clays' negligence claim.  Thus, the issues in the Thai Action and the

14   Washington Action concerning the Thai Defendants' liability for negligence and Mr.

15   Clay's entitlement to compensation are identical.  The court, therefore, concludes that

16   this factor weighs in favor of the application of collateral estoppel to the Clay's

17   negligence claim.

18          **2.     Interests of Justice**

19          The Clays also argue that the court should not apply the collateral estoppel

20   doctrine to their claims because application of the doctrine would work an injustice.

21   (Resp. at 11.)  They argue that Mr. Clay did not have a full and fair opportunity to appear

22   and litigate his claim in Thailand.  (*Id.*)  Specifically, they maintain that Mr. Clay did not

have his day in court because, at the time of trial in the Thai Action, he was unable to

travel due to his injuries and his doctor's recommendation against prolonged air travel.

(*See id.*; *see also* Clay Decl. ¶¶ 15-18; Benirschke Decl. (Dkt. # 38) ¶ 8.)

        In determining whether application of collateral estoppel would work an injustice,

the court should "focus on whether the parties to the earlier adjudication were afforded a

full and fair opportunity to litigate their claim in a neutral forum."[7]  *Nielson By &*

*Through Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 956 P.2d 312, 317 (Wash. 1998).

In the context of collateral estoppel, "'[i]njustice means more than that the prior decision

was wrong.  When faced with a choice between achieving finality and correcting an

erroneous result, [the court] generally opt[s] for finality."  *State Farm Mut. Auto. Ins. Co.*

*v. Avery*, 57 P.3d 300, 304 (Wash. Ct. App. 2002) (citing *In re Marriage of Brown*, 653

P.2d 602, 603-04 (Wash. 1982)).

        Here, the Clays primary complaint is that the Thai court denied Mr. Clay's motion

for a continuance, and so, he could not be present at trial in the Thai Action.  (*See* Resp.

at 11.)  Yet, the fact that the Clays disagree with the Thai court's determination

---

        [7] At least one Washington court has articulated a four-factor test to determine whether application of collateral estoppel works an injustice. *See State Farm Mut. Auto. Ins. Co. v. Avery*, 57 P.3d 300, 304-06 (Wash. Ct. App. 2002).  Those factors are:  (1) the character of the court issuing the judgment; (2) the scope of the original court's jurisdiction; (3) procedural informality; and (4) procedural safeguards, including appeals.  *Id.*  No party briefed or argued these factors.  (*See generally* MSJ; Resp.)  Mr. Clay may disagree with the Thai court's decisions (1) to deny him a trial continuance, and (2) to rule ultimately in Thai Defendants' favor on his claims.  Nevertheless, although Mr. Clay's Thai attorneys describe portions of Thai law and procedure generally (*see generally* Krupica Decl.; 2d Dixon Decl. (Dkt. # 45) ¶ 3, Ex. A (attaching a copy of Mr. Terapun Petchsuwan's declaration, who is an experienced Thai attorney)), no party argues that the Thai Action contained procedural or jurisdictional defects (*see generally* MSJ; Resp.).  Accordingly, the court declines to address these factors specifically here.

1    concerning his requested continuance does not mean that Mr. Clay did not have a full and

2    fair opportunity to litigate his claim.  Mr. Clay chose the court in Thailand to press his

3    claim and was represented by counsel in the Thai Action.  (*See* Clay Decl ¶¶ 15, 17; *see*

4    *also* Krupica Decl. ¶ 8 (stating that, as Mr. Clay's Thai counsel, he requested a

5    continuance of the Thai trial on Mr. Clay's behalf "to accommodate Mr. Clay's medical

6    travel requests," but the Thai court denied the request for a continuance).)  Although Mr.

7    Clay did not prevail in seeking a trial continuance, neither he nor his Thai attorney assert

8    that there were any procedural irregularities in the Thai court's decision.  (*See generally*

9    Resp., *see also generally* Krupica Decl.)  Although Mr. Clay was not present at the Thai

10   trial, he submitted evidence "through written documentation."  (Krupica Decl. ¶ 14.)

11   Further, although Mr. Clay's Thai attorney states that "witnesses were not called due to

12   the denial of continuation," Mr. Clay's Thai attorney does not explain why he did not call

13   any witnesses other than Mr. Clay, or why he failed to cross-examine any witnesses.  (*See*

14   *id.* ¶ 9.)  Indeed, the fact that Mr. Clay could not travel to Thailand does not explain

15   either of these decisions.  Accordingly, the court is unable to conclude that Mr. Clay did

16   not have a full and fair opportunity to litigate his claim.  Mr. Clay may not have taken full

17   advantage of that opportunity, but that does not mean that the Thai court did not afford it

18   to him.  Because Mr. Clay chose the Thai forum to press his claim, was represented by

19   counsel, had the opportunity to present evidence, and his case proceeded to trial and

20   resolution there, the court cannot conclude that application of the doctrine of collateral

21   estoppel would work an injustice here.  The fact that Mr. Clay disagrees with the

22

outcome of the Thai Action does not mean that it is unjust that collateral estoppel bars

him from re-litigating the same issues in this forum.

In sum, the court concludes that the doctrine of collateral estoppel applies to the

issues of negligence and Mr. Clay's entitlement to compensation.  The Thai court's

determination of those issues serves to collaterally estop the Clays' re-litigation of those

issues in this case.  Because those issues have been previously determined in Defendants'

favor, Moving Defendants are entitled to summary judgment on the Clays' claims here.

**D.      Forum Non Conveniens and International Comity**

Moving Defendants also move for summary judgment based on the doctrines of

forum non conveniens and international comity.  (*See* MSJ at 12-17.)  Because the court

has determined that Moving Defendants are entitled to summary judgment on grounds of

res judicata and, alternatively, on grounds of collateral estoppel, *see supra* §§ III.B.,

III.C, the court declines to reach these issues.

## IV.  CONCLUSION

Based on the foregoing analysis, the court GRANTS Moving Defendants' motion

(Dkt. # 35) and enters summary judgment in Moving Defendants' favor on the Clays'

claims.

Dated this 27th day of April, 2020

JAMES L. ROBART
United States District Judge